Argued December 9, 1971, affirmed April 4, 1972

CORBIN ET UX, *Respondents, v.* RUTHERFORD
ET UX, *Appellants.*
495 P2d 259

*John E. Ferris,* Medford, argued the cause and filed briefs for appellants.

*Bruce Kellington,* Medford, argued the cause for respondents. On the brief were Harbison, Kellington & Kellington, Medford.

Before O'Connell, Chief Justice, and McAllister, Denecke, Holman, Howell and Bryson, Justices.

HOLMAN, J.

Plaintiffs, the sellers of real property, brought a suit to foreclose the contract of sale. Defendants, the purchasers, answered, seeking to rescind the contract. The parties stipulated that plaintiffs were entitled to a decree of foreclosure unless defendants were entitled

to rescind. As a result, the only issue litigated was that of defendants' right to a decree of rescission. The trial court denied rescission and foreclosed the contract. Defendants appealed.

The property in question, approximately twenty acres with a residence thereon, lies in a rural part of Jackson county. It had been plaintiffs' home for many years, but, because of their advanced age, plaintiffs were required to move to a less isolated community. The property is south of the Applegate river, with the only available public road being north of the river. Until the occurrence of a severe winter flood about twelve years prior to the sale in question, plaintiffs had gained access to the public road by passing through a neighbor's land to reach a logging bridge, and then traveling through two additional pieces of land which lie between the north bank of the river and the highway. The piece adjacent the north end of the bridge was at that time owned by plaintiffs, and the second piece, the one adjacent the highway, was owned by the same neighbor through whose land plaintiffs passed to gain the south end of the bridge. Plaintiffs' land on the north bank of the river was not contiguous to their land south of the river upon which plaintiffs lived, and which was the subject of the sale here under consideration.

Prior to the present sale, plaintiffs divested themselves of the property they owned on the north side of the river at the site of the logging bridge.

During the intervening twelve years between the bridge washout in the winter flood and the present sale, all access to the public highway for plaintiffs, and for the neighbor over whose land plaintiffs had previously passed, was through another neighbor's

land, which lies downstream, and then across another bridge, to the public highway.

Following the sale to the defendants, the downstream neighbor terminated the access through his property. Defendants thereafter discussed with the first neighbor an agreement for rebuilding the logging bridge. Defendants then retained a contractor to build the bridge and, after it was partially constructed, asked the neighbor to contribute to the cost. The neighbor declined to do so because he claimed he had not been consulted concerning the suitability of the plans nor had he been permitted to talk to the contractor. Defendants thereafter terminated work on the bridge, abandoned the property, and ceased making payments. Their stated reason for abandoning the bridge construction and the property was that, at that time, they first learned from their neighbor that they had no right of way. At the time the defendants abandoned the property, they had paid more than half the purchase price.

Defendants claim they are entitled to rescission because the plaintiffs misrepresented the property in the following particulars: 1) that the access being used through the downstream neighbor's land constituted a valid appurtenant right of way to the property; 2) that a valid appurtenant right of way existed from the property to the site of the logging bridge; 3) that a right of way existed on the north side of the Applegate river from the site of the logging bridge to the public road, and that said right of way was appurtenant to the property; 4) that a dismantled bridge then lying unused adjacent the stream was suitable for use on the site of the logging bridge.

■ We do not have to decide whether the access

through the downstream neighbor's land was misrepresented or not. If such a misrepresentation was made, there was no basis for reliance thereon. Defendant Dr. Rutherford admitted that when defendants first came upon the property through the downstream neighbor's land, they encountered two signs informing them that that particular access was permissive and could be revoked at any time.

■ The evidence concerning the suitability of the dismantled bridge is in the same category as the previous claimed misrepresentation, because Dr. Rutherford admitted that he did not know who owned the bridge at the time he signed the contract of sale and that he had not been told plaintiffs owned it. Defendants had no right to believe they were receiving from plaintiffs any right to use the dismantled bridge, regardless of whether it was suitable for use or not.

■ The evidence relating to whether the alleged misrepresentation was made concerning the right of way from the property to the logging bridge site is in dispute, but we agree with the trial judge's finding in plaintiffs' favor on the point. When the road through the downstream neighbor's land was closed, defendant Dr. Rutherford's actions were not those of a person who thought he had a right of way to the site of the logging bridge. Instead, there is evidence he not only discussed with his first neighbor the reconstruction of the bridge, but also negotiated with him for access across the neighbor's land on both sides of the river.

■ Defendants testified they were led to believe the plaintiffs were granting them a right of way to the highway over the property plaintiffs had owned north of the bridge. Plaintiffs admit they told defendants that at the time plaintiffs were using the logging

bridge they were never concerned about not having a right of way through their neighbor's land because, if the neighbor had not provided access across his land, plaintiffs were in a position to deny him the right to travel across their property at the north end of the bridge. However, plaintiffs claim defendants were told they would not be getting such a right of way. In this situation, where the manner in which the witnesses testify plays such a large part in determining who is to be believed, we are reluctant to overrule a careful determination by the trial judge in plaintiffs' favor.

Apparently, the trial judge believed that, at the time of the purchase, the defendants relied on the continued indulgence of the downstream neighbor to permit access to the highway through his land. Because of the property description, it is difficult for this court to see how defendants could have believed they were getting an interest of any kind to the use of property north of the river. The entire description in the contract of what was being sold was simple. It read:

> "That portion of Government Lot 6 in Section 30, Township 38 South, Range 3 West of the Willamette Meridian in Jackson County, Oregon, lying Southerly of the centerline of the Applegate River."

There was no property or right of way described north of the river. We conclude that the defendants did not carry their burden of proof.

The decree of the trial court is affirmed.